IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| V. | : | Criminal Action No. 05-96-GMS |
| | : | |
| JIMMIE LARK, | : | |
| | : | |
| Defendant. | : | |

**MOTION FOR RECONSIDERATION OF NO-BOND STATUS**

The defendant through undersigned counsel hereby moves this Honorable Court to modify this Court's Order that he be held without bond. In support of his request the following is asserted:

1. Mr. Lark is currently charged with Bank Fraud and Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. § 1344 and 18 U.S.C. § 371. Essentially, Mr. Lark is charged with passing counterfeit checks over an eighteen month period.

2. After a detention hearing on October 25, 2005, the Court determined no combination of conditions could satisfy the Bail Reform Act's presumption of pretrial release. Given more detail of Mr. Lark's history, we would urge that the Court could release him on various conditions sanctioned by the Bail Reform Act.

3. Mr. Lark is one of twenty children that resided with his parents in North Philadelphia. His father had other children outside the marriage. While both parents and some of his sibling are deceased, his remaining siblings still reside in Philadelphia. Mr. Lark's criminal history consist

solely of one conviction for second degree murder in 1971.[1]  The circumstances are that Mr. Lark was convicted for being a look out in a criminal incident where his bother killed someone.  This first experience with the criminal justice system resulted in incarceration at Graterford Prison in Pennsylvania.  At 5' 4" he has a slight build and was threatened with forced homosexuality and exposed to gang violence.  As a result, upon information, he walked away from the prison prior to the completion of his sentence.  Ironically, the original conviction was thrown out shortly thereafter.

    4.    For about two years, Mr. Lark began working for Woolworths and with his father, cleaning carpets at Philadelphia International Airport.   He then worked at a manufacturing company and as a porter at a retirement facility.  He proceeded to get his high school diploma and received auto mechanic training at the JFK Training Center.  He subsequently enrolled at Temple University, where he attended for three semesters.   For two summers, he was a counselor at the local YMCA.  He worked various other jobs before being incarcerated on the active warrant.  They included working at City Hall in Philadelphia and  receiving training as a chef at the Opportunity Industrial Center.  When he was arrested, Mr. Lark pled guilty hoping to avoid additional time in prison; he was immediately paroled.

    5.    Upon being released, Mr. Lark has worked at various job: a warehouse - Cambria Cannisters, construction at 18th and Rittenhouse Square and at Family Affair Construction, Dunkin Donuts, Murray's Steak House, Shop-Rite and Burlington Coat Factory. Unfortunately, the toll of his experiences had negative effects.  Mr. Lark's acquired addiction is one of them. He received some assistance with his problem, however, a violation of his parole ended treatment.

---

[1]Prior to the conviction Mr. Lark was in school and had been working at the post office.

6. In addition to his siblings, Mr. Lark has three children. At present his children are all grown. Two of the children were conceived before his arrest in 1970. Due to the circumstances of his life, his contact with those children was interrupted, yet, he has had some subsequent contact with these two sons. His youngest son whom the Court took note that Mr. Lark did not know where his son was located, now stays with one of Mr. Lark's sister. This son has mental heath issues and was staying with Mr. Lark at one point but eventually left his home. This son had a child that Mr. Lark was preparing to adopt because of the problems of both parents.

7. Mr. Lark also has a significant relationship with a woman with which he was living before his arrest. He considers her his fianceé and she would act as a custodian on his behalf reminding him of his court dates and reporting any trangressions as far as conditions of release. Counsel has also confirmed that Mr. Lark may work with his nephew at D&B Construction.

8. In order for a court to order the extraordinary step of detention without chance of bond, the government must prove that an individual is flight risk. In order for the government to sustain its burden regarding flight it must be shown by a preponderance of the evidence. United States v. Suppa, 799 F.2d 115 (3d Cir. 1986).

9. For Mr. Lark to be considered a flight risk subject to being held without bond, there must be some evidence that he seek to avoid his *current* charges. See. e.g. United States v. Hilmer, 797 F. 2d 156 (3rd Cir. 1986). United States v. Spilotro, 786 F. 2d 808 (8th Cir. 1986). Given Mr. Lark's *current* age, prior employment history and family ties, it is unlikely he will escape from the charges that have been brought against him. In order to determine that a defendant is a flight risk, the court must find "by a preponderance of evidence that no conditions

will reasonably assure [the defendant's] appearance in court." United States v. Hammond, 204 F.Supp.2d 1157, 1165 (E.D. Wisc. 2002). In Hammond, the defendant was charged with racketeering and drug-related charges, however, the court ruled that he was not a flight risk. In United States v. Jalbert, 231 F.Supp2d. 359, 362 (D. Me. 2002), the court held that the defendant charged with possession of a firearm by an illegal alien and possession by a felon did not pose a flight risk. The court reasoned that even if convicted, the defendant was neither facing a substantial minimum mandatory sentence or guideline sentence. Jalbert, 231 F.Supp2d. 359 at 362. See also United States v. Giordana, 370 F. Supp 2d. 1256, (S. D. Fla 2005) (defendant was released even though he faced serious charges and faced a possible 87 to 107 month guideline range that was subject to be increased). Here, Mr. Lark does not face a comparable sentence, he does not face the difficult situation faced previously, he has ties that are important to him and his current age make clear that he will not flee.

    10.   The Bail Reform Act 3142 (g) sets out a number of factors to be utilized before determining that one should have the extraordinary status of being held without any chance of release on bond before being adjudicated guilty. Any other interpretation violates the cornerstone of the American system of justice that requires one to be considered innocent until proven guilty.

    11.   We contend that conditions can be set to prohibit any concern the Court may have regarding pretrial release. The court should consider conditions such as a curfew, a reasonable money bond, Third Party Custodianship, halfway house or electronic monitoring before deciding that Mr. Lark can be held without any chance of release. Any concern the court might have about drug use may be addressed by placement in an appropriate treatment facility.

**WHEREFORE**, for these reasons and any other such reasons as shall appear to the Court at a hearing of this matter, the defendant ask that he be released on conditions as herein specified.

/S/
Penny Marshall
Assistant Federal Public Defender
704 King Street, Suite 110
Wilmington, DE 19801
(302) 573-6010

Dated: December 20, 2005

**CERTIFICATE OF SERVICE**

Undersigned counsel certifies that a copy of **Defendant's Motion for Reconsideration of No-bond Status** is available for public viewing and downloading and was electronically delivered on December 20, 2005, to:

> Beth Moskow-Schnoll
> Assistant United States Attorney
> The Nemours Building
> Wilmington, DE 19801

>> /S/
>> Penny Marshall
>> Assistant Federal Public Defender
>> 704 King Street, Suite 110
>> Wilmington, DE 19801
>> (302) 573-6010

Dated: December 20, 2005