## IN THE UNITED DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Criminal Action No. 05-96-GMS |
| | : |
| JIMMIE L. LARK, | : |
| | : |
| Defendant. | : |

**RESPONSE OF UNITED STATES TO DEFENDANT'S
MOTION FOR RECONSIDERATION OF NO-BOND STATUS**

NOW COMES the United States of America, by and through its attorneys, Colm F. Connolly, United States Attorney for the District of Delaware, and Beth Moskow-Schnoll, Assistant U.S. Attorney, and, for the reasons stated below, respectfully requests that defendant's motion for reconsideration of no-bond status be denied.

**Facts**

On October 19, 2005, the United States filed a Criminal Complaint against the defendant charging him with using other people's identities while negotiating over $60,000 in counterfeit checks. At the defendant's initial appearance on October 20, 2005, the United States filed a motion seeking the pretrial detention of the defendant. The Magistrate Judge held a detention hearing on October 25, 2005.

At the detention hearing, the United States presented the following evidence in support of its argument that the defendant represented a serious risk of flight. First, the United States showed that the nature of the crime, primarily the fact that the defendant used identification, including credit cards and drivers' licenses, in the names of other actual persons when negotiating the counterfeit checks, mitigated against the defendant's release. Second, the weight

of the evidence against the defendant is quite strong as the defendant had admitted his participation in the offense and the United States has photographs of the defendant negotiating all but two of the counterfeit checks at issue.

Third, the defendant's history mitigates against his release. The defendant has a twenty year history of substance abuse and admitted to pretrial services that, on average, he spent $200 a week on cocaine. During this same time period, the defendant reported no steady, legitimate employment. Likely because of these two facts, he has no financial resources with which to post a bond. Furthermore, the defendant has no ties to Delaware and had lived at his most recent address in Lebanon, Pennsylvania for only three months before his arrest. Prior to that, he had lived in Philadelphia either with or near his family but left because he believed his family was a bad influence on him. In fact, the defendant admitted that he hasn't had contact with two of his three children in at least ten years and currently did not know the whereabouts of the third.

The most important piece of the defendant's history was the fact that he escaped from Graterford Prison after being convicted of second degree murder. In fact, the defendant boasted to pretrial services that he had been a fugitive for ten years and that no one had ever figured out how he had escaped from Graterford. Sometime after he was caught, the defendant was placed on parole and proceeded to violate the conditions of his parole twice.

At the close of the hearing, after considering the above facts, the Magistrate Judge ordered the defendant detained pending trial. A detailed statement of reasons for the detention is contained in the Order of Detention Pending Trial.

That same day, October 25, 2005, the grand jury for the District of Delaware handed down a two count indictment charging the defendant, in Count One, with conspiracy to commit bank fraud in violation of 18 U.S.C. § 371, and, in Count Two, with bank fraud in violation of

18 U.S.C. § 1344. The indictment alleges, *inter alia*, that the defendant, using identification in the names of other persons, negotiated fraudulent checks totaling over $90,000.

The defendant filed his instant motion on or about December 20, 2005. This is the response by the United States.

## Argument

### The Defendant Represents A Risk Of Flight.

A court may detain a defendant pending trial if the Government proves by a preponderance of the evidence "that no condition or combination or conditions will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(e); *U.S. v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986) (government must prove risk of flight by a preponderance of the evidence). As detailed below, the facts supporting the defendant's detention more than meet the requisite standard.

First, the nature and circumstances of the offenses with which the defendant is charged show that he should be detained. While it is true that the nature of the offenses, i.e. bank fraud and conspiracy, does not support an argument that the defendant would represent a danger to the community if he were released, the defendant's crimes, in which he conned unsuspecting bank tellers into cashing counterfeit checks, "evidence a criminal penchant for fraud, which makes the Court dubious of the defendant's assertions that we can trust him to appear." *United States v. Marks*, 947 F.Supp. 858, 863 (E.D. Pa. 1996).

Furthermore, should the defendant be convicted of the offenses with which he is charged, by the Government's estimate, he faces roughly two years in prison. Given this penalty, the defendant has an incentive to flee. The defendant's risk of flight is highlighted by the fact that the defendant escaped and was a fugitive for ten years the last time he was incarcerated. Thus,

contrary to the defendant's assertions, the nature and character of the offenses with which the defendant is charged point to the conclusion that the defendant is likely to flee.

The defendant primarily rests his motion on his argument that he is unlikely to flee because of his close ties to his girlfriend. This argument should be rejected for several reasons. First, while the defendant may have close ties to his girlfriend in Lebanon, Pennsylvania, he has no ties to Delaware, the district in which he is being prosecuted. Second, the defendant's girlfriend in Lebanon, Pennsylvania is his only tie to that community. There is no evidence that could be corroborated by pretrial services that the defendant has had legitimate employment in that community, or any other community. Furthermore, the defendant has no assets or property. Thus, he has no economic ties to Lebanon, Pennsylvania or to any other community. *See U.S. v. Holtz*, 1995 WL 106895*2 (3d Cir.); *U.S. v. Kisling*, 334 F.3d 734, 735 (8th Cir. 2003) (preponderance of evidence showed risk of flight because defendant had no family ties, was unemployed, and had history of failing to appear). Thus, defendant's alleged community ties are not strong enough to prevent him from fleeing.

The defendant also appears to be arguing that he is not a flight risk because he has only a minimal criminal history. This argument fails for at least two reasons. First, the nature of the defendant's criminal history is only relevant to the issue of whether he represents a danger to the community. *See Himler*, 797 F.2d 156. That is not at issue here. Second, the defendant fled when incarcerated on his second degree murder charge and, by his own admission, was a fugitve for ten years. Furthermore, upon being caught, the defendant violated the conditions of his parole twice. Thus, contrary to the defendant's argument, these facts show that the defendant represents a risk of flight and that he would be unable to abide by any conditions of release.

Finally, the defendant claims that he is not a flight risk because he is willing to comply

with stringent release conditions. However, there is no evidence to support this claim, and the defendant's history of escape and failure to abide by parole conditions prove otherwise.

### Conclusion

Wherefore, for the reasons stated above, the facts support a finding that no condition or combination of conditions can assure the defendant's appearance as required. Therefore, the defendant's motion for reconsideration of no-bond status should be denied.

                COLM F. CONNOLLY
                United States Attorney

BY: _____/s/_____
      Beth Moskow-Schnoll
      Assistant United States Attorney

Dated: December 27, 2005